IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02174-DDD-KMT

HT SERVICES, LLC

Plaintiff,

v.

WESTERN HERITAGE INSURANCE COMPANY

Defendant.

---

**DEFENDANT WESTERN HERITAGE INSURANCE COMPANY'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

---

Defendant Western Heritage Insurance Company (Western), by counsel, John M. Palmeri and Christine M. Kroupa of Gordon & Rees Scully Mansukhani, LLP, cross-moves the Court for summary judgment on Plaintiff's claims for relief pursuant to Fed.R.Civ.P. 56(b).

## I.     Introduction.

In this insurance action, Plaintiff HT Services, LLC (HT) seeks coverage for an underlying lawsuit alleging defective construction of retaining walls at a residential subdivision. Western moves for summary judgment on the ground it has no obligation to defend or indemnify HT in the underlying lawsuit because there is no coverage for construction defects under Western's policies, which were only intended to provide premises liability coverage for HT's offices and vacant land it owned, not for liability arising from construction of a residential subdivision on the land. Because the material facts are undisputed and discovery is unnecessary, this Court can resolve the coverage issues as a matter of law on summary judgment.

II.    **Statement of undisputed material facts.**

1.    From July 11, 2011 to July 11, 2012, HT was insured under a Commercial General Liability (CGL) Policy issued by Western, Policy No. SCP 0841056 (the 2011-2012 Policy). (Ex. A; Complaint [Doc. 3], ¶5).

2.    WL issued another policy to Western, Policy No. SCP 0895362, from July 11, 2012 to July 11, 2013 (the 2012-2013 Policy) (the 2011-2012 Policy and 2012-2013 Policy are herein referred to collectively as "the Policies"). (Ex. B; Complaint [Doc. 3], ¶5).

3.    The Policies insured two separate premises owned by HT: its offices, located at 455 E. Pikes Peak Avenue, Suite 100, Colorado Springs, Colorado, and vacant land located at "East Woodmen Road, Colorado Springs, Colorado, at the intersection of Shining Peak Lane and East Woodmen Road, Colorado Springs, Colorado" (the East Woodmen Property). (Ex. A, WHIC_5, 12, 33; Ex. B, WHIC_74, 97). Both policies describe the East Woodman Property as "Vacant Land—other than NFP." *Id.*

4.    HT's applications for the Policies, which were signed by HT's principal on its behalf, described the four acres of East Woodmen Property for which CGL coverage was sought as "Vacant Land." (Ex. C, WHIC_379, 382, 384; Ex. D, WHIC_405, 409-10).

5.    HT paid a total premium of $750 for each policy. (Ex. A, WHIC_5; Ex. B, WHIC_67).

6.    Both policies contained the following Insuring Agreement in Coverage Part A:

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period.... (Ex. A, WHIC_15; Ex. B, WHIC_77).

7.      The Schedule lists the East Woodmen Property as the "designated premises"; no "project" is listed. (Ex. A, WHIC_33, Ex. B, WHIC_97). Both policies' Declarations pages describe the East Woodmen Property as "vacant land." (Ex. A, WHIC_12, Ex. B, WHIC_74).

8.      Both Policies contain the following Endorsements:[1]

    a.    "Limitation of Coverage to Designated Premises or Project", which insures property damage arising out of the ownership, maintenance or use of the premises (Ex. A, WHIC_33; Ex. B, WHIC_97);

    b.    "Total Exclusion-Habitational New Construction", which precludes coverage for claims arising out of, relating to, or connected with your work in the development of mixed-use structures or any other type of residential structure (Ex. A, WHIC_42; Ex. B, WHIC_107);

    c.    "Products-Completed Operations", which excludes coverage for property damage for completed work (Ex. A, WHIC_12, 32; Ex. B, WHIC_74, 94).

9.      The 2012-2013 Policy contains three Endorsements that expressly provide coverage for "Any and All Construction Activities" is excluded:

    a.    The "Exclusion-Designated Products Endorsement" states: "This insurance

---

[1] The language of each Endorsement will be discussed *infra* at pp. 9, 13, and 17.

does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of any of 'your products' shown in the Schedule". (Ex. B, WHIC_95). The Schedule lists "Any and All Construction Activities" as "Designated Products." *Id.*

b.  The "Exclusion-Designated Work Endorsement" provides: "This insurance does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of 'your work' shown in the Schedule". (*Id.*, WHIC_96). The Schedule lists "Any and All Construction Activities" as the "Description of your work." *Id.*

c.  The "Exclusion-Designated Ongoing Operations Endorsement" provides:

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

The Schedule lists "Any and All Construction Activities" as the "Description of Designated Ongoing Operation(s)" and does not specify a "Specified Location." (*Id.*, WHIC_99).

10.  Sometime in 2011 or 2012, HT undertook development of the vacant land at the East Woodmen Property and constructed a residential development there known as Willow Creek, a common interest community for which HT was both declarant and developer. (Ex. E, ¶4).

11.  In December 2011, HT contracted with Dirt Cheap Grading & Landscaping for the construction of retaining walls at the residential development at Willow Creek. (Ex. F-1).

12.  HT's counsel informed Western in a letter dated February 26, 2018 that:

The claimed occurrence was during the policy period of HT Services' policy no. SCP0841056, 7/11/2011 to 7/11/2012. Dirt Cheap Grading & Landscaping ('Dirt Cheap') contracted to build the walls on December 20, 2011. See Attachment 2, Dirt Cheap Contract. The landscaping walls in question were built in or around February, 2012. In this matter, the existence of the walls themselves is the claimed 'occurrence,' because Willow Creek claims that the fact that the walls were not engineered creates a safety hazard. Thus, the claimed occurrence was during the coverage period of Policy No. SCP0841056 between 7/1/2011 to 7/11/2012 because that is when the walls were built. (Ex. F-2).

13.    In January 2016, Willow Creek CS Homeowners Association (the HOA) filed a lawsuit against HT and others in El Paso District Court, Colorado, Case No. 2016CV30271, alleging that "HT served as the developer and declarant of Willow Creek, was involved in the design, development, and construction of Willow Creek, including all improvements within Willow Creek," and that HT and others were negligent in the construction of the retaining walls at the Willow Creek residential development. (Ex. E; Complaint [Doc. 3], ¶¶4, 8-9).

14.    The HOA filed four Amended Complaints against HT in Case No. 2016CV30271 (Exs. G-J), all of which contained the same allegations recited above.

15.    Western denied coverage for the HOA's Complaints against HT on November 11, 2015 and March 21, 2018. (Exs. K, L; Complaint [Doc. 3], ¶15).

16.    On October 18, 2018, Western, through counsel, denied coverage for the HOA's claims against Terry Schooler and Schooler & Associates. (Ex. M). The denial letter explained:

The Policies were issued to HT Services for the classification description of 'Vacant Land.' The classification description contained on the declarations page of a policy controls and limits coverage to that specified description. Accordingly, the Policies only provide coverage with respect to vacant land.

The intended scope of coverage afforded under the Policies is evidenced by the fact that each of the Policies includes a Limitation of Coverage to Designated Premises or Project endorsement.... (*Id*. at 5).

### III.    Standard of review.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, this Court must view the record and all reasonable inferences which may be drawn from it most favorably to the nonmoving party. *Wilson v. Meeks,* 98 F.3d 1247, 1253 (10th Cir. 1996). A "genuine" fact does not exist simply by the nonmoving party demonstrating some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the nonmoving party must come forward with evidence significantly probative of its claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49 (1986). *See* Fed.R.Civ.P. 56(e). If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 324. *See Anderson*, 477 U.S. at 249-52.

### IV.    Principles of insurance policy construction under Colorado law.

#### A.    General principles.

In diversity cases, federal courts apply Colorado law and interpret insurance policies as a Colorado court would. *Leprino Foods Co. v. Factory Mut. Ins. Co*., 453 F.3d 1281, 1287 (10th Cir. 2006). Under Colorado law, interpretation of an insurance policy is a question of law. *Id*. Insurance contracts are construed in accordance with general contract law. *Arkansas Valley Drilling, Inc. v. Continental Western Ins. Co.*, 703 F.Supp.2d 1232, 1237 (D. Colo. 2010). An insurance contract must be interpreted according to the plain and ordinary meaning of its language according to common usage. *Cyprus Amax Minerals Co. v. Lexington Ins. Co*., 74 P.3d 294, 299 (Colo. 2003). When the

language is plain and its meaning is clear, the agreement must be enforced as written. *In re May*, 756 P.2d 362, 368 (Colo. 1988). The Court's construction of policy provisions "must be fair, natural and reasonable rather than strained or strictly technical." *Public Serv. Co. v. Wallis & Cos.,* 986 P.2d 924, 939 (Colo. 1999). This Court is not at liberty to make a new contract, *Kane v. Royal Ins. Co.*, 768 P.2d 678, 683-84 (Colo. 1989), and may not add provisions to extend coverage beyond that contracted for. *Cyprus Amax*, 74 P.3d at 299. An insurer cannot be liable beyond the scope of risks clearly covered in the policy. *Kane*, 768 P.2d at 683. If a limitation or exclusion in the policy is unambiguous, it must be enforced. *Lopez v. Dairyland Ins. Co.*, 890 P.2d 192, 194 (Colo. App. 1994). HT has the burden to show the loss falls within the coverage grant of the Insuring Agreement, while Western has the burden to prove a particular loss falls within an exclusion. *Leprino Foods*, 453 F.3d at 1287.

**B.    Scope of the duty to defend.**

Under Colorado law, the duty to defend arises where the facts alleged in the pleadings potentially fall within the scope of the policy's coverage. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo. 1991). The duty to defend "must be determined based solely on a comparison of the allegations of the complaint made against the insured with the insuring provisions of the policy." *Employers Fire Ins. Co. v. Western Guar. Fund Servs.*, 924 P.2d 1107, 1110 (Colo. App. 1996). Whether a duty to defend is owed is a question of law. *American Economy Ins. Co. v. William Schoolcraft, M.D., P.C.*, 551 F.Supp.2d 1235, 1239 (D. Colo. 2007). "[A]n insurer has no duty to defend if the claims asserted in the complaint are clearly excluded from coverage." *Lopez v. American Family Mut. Ins. Co.*, 148 P.3d 438, 439 (Colo. App. 2006).

**V.    Coverage for the underlying construction defect lawsuit is outside of the Insuring Agreement and expressly excluded by the Western Policies.**

    **A.    There is no coverage for the HOA's claims under the 2012-2013 Policy, which expressly excludes coverage for "Any and All Construction Activities."**

Because it cannot be ascertained from the underlying complaints (Exs. E, G-J) when the alleged "property damage" occurred, Western addresses coverage under both Policies because the alleged "property damage" must necessarily have occurred between December 2011, the time of HT's contract with the subcontractor who constructed the retaining walls (Ex. F-1), and January 2016, when the HOA's Complaint against HT was filed. (Ex. E).[2]  The 2012-2013 Policy is addressed first because Western explicitly disclaimed coverage under this Policy (SUF 15), and because it completely and unambiguously excludes liability coverage for "Any and All Construction Activities."[3]

Three separate Endorsements to the 2012-2013 Policy expressly provide that coverage for "Any and All Construction Activities" is excluded: the Exclusion-Designated Products Endorsement (Ex. B, WHIC_95); the Exclusion-Designated Work Endorsement (*id.*, WHIC_96); and the Exclusion-Designated Ongoing Operations Endorsement. (*Id.*, WHIC_99). These Endorsements, which expressly modify the policy and therefore prevail over the body of the policy if there is any conflict, *Martinez v. Hawkeye-Security Ins. Co.*, 576 P.2d 1017, 1019 (Colo. 1978), exclude

---

[2]The HOA's complaints do not assert any "predicate offense" under Coverage Part B. *See Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 986-87 (10th Cir. 1998).

[3]"Any" and "all" have been described as "the most comprehensive words in the English language." *Mountain Stone Co. v. H.W. Hammond Co.*, 564 P.2d 958, 961 (Colo. App. 1977). "Activity" is defined as "An occupation or pursuit in which [a] person is active." BLACK'S LAW DICTIONARY 33 (6th ed. 1990).

coverage for HT's "product", "work" and "ongoing operations" included in the "products-completed operations hazard" arising from "Any and All Construction Activities," and exclude coverage for "property damage" "arising out of the ongoing operations described" as "Any and All Construction Activities," "regardless of whether such operations are conducted by you or on your behalf of whether the operations are conducted for yourself or others." (*Id.*, WHIC _99). Because HT's "design, development, and construction" of the retaining walls (Ex. E, ¶¶12-15, 20) amounted to "construction activities," coverage for the HOA's construction defect claims is expressly excluded under the 2012-2013 Policy. *See El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mut. Ins. Co.*, 803 N.E.2d 532, 538 (Ill. App. 2004) (construing policy exclusion for "any and all construction activities" to encompass *all* activities relating to construction and which are necessary for construction).

> **B.    Coverage for the HOA's claims is not within the Insuring Agreement of the 2011-2012 and 2012-2013 Policies.**

Both Policies contained the "Limitation of Coverage to Designated Premises or Project" Endorsement (Ex. A, WHIC_33; Ex. B, WHIC_ 97). This Endorsement modified the Insuring Agreement of the Policies' Commercial General Liability Coverage Part to provide that "This insurance applies only to 'bodily injury', 'property damage', 'personal and advertising injury' and medical expenses arising out of: 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or 2. The project shown in the Schedule." Because it modifies all coverages under the Policies, this language effectively converts the CGL policy into a premises liability policy. *See Union American Ins. Co. v. Haitian*

*Refugee Ctr./Sant Refijie Ayisyin, Inc.*, 858 So.2d 1076, 1078 n.1 (Fla. App. 2003).[4]

Thus, the policy covers "property damage" arising out of either the "ownership, mainten-ance or use of the premises" or the "project."[5]  The Schedule lists the East Woodmen Property as the "designated premises". (Ex. A, WHIC_33; Ex. B, WHIC_97). Both Polices thereby limited coverage to "property damage" "arising out of the ownership, maintenance or use" of the East Woodmen Property, which is listed as "vacant land." (Ex. A, WHIC_12, Ex. B, WHIC_74).[6] The Policies do not provide any coverage for any activities relating to the vacant land other than the three listed, "ownership, maintenance or use." *See Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F.Supp.2d 381, 389 (S.D.N.Y. 2008) ("The Designated Premises Endorsement is clearly a premises liability policy. Its purpose is to insure [the insureds] against liability incident to its ownership, maintenance, or use of the listed premises and operations necessary or incidental to those premises").  Because the underlying lawsuit did not involve allegations related to vacant land or to allegations regarding the ownership, maintenance or use of vacant land, but rather involved

---

[4]As the court observed in *Union American*, 858 So.2d at 1078:

A very common form of liability insurance is the one which insures the owner, occupier, or operator of real property against liability incident to his ownership or use of the premises. Such insurance, the purpose of which is simply ***to protect against liability arising from the condition or use of the building as a building*** must be distinguished from insurance against liability arising from the nature of the enterprise or activity conducted therein. (quoting 11 COUCH ON INSURANCE 2D § 44:379 at 551-52 (1982)).

[5] The use of the disjunctive indicates that the "premises" and the "project" do not mean the same thing; otherwise, there would be no need for the disjunctive. *See Markel Intl. Ins. Co. v. Erekson*, 279 P.3d 93, 96 (Idaho 2012).

[6]"In the context of whether a particular loss comes within policy coverage, 'arising out of' has been construed to create a 'but for' test." *Management Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 37 (Colo. App. 2004).

only allegations related to HT's construction of a residential development, the alleged conduct was outside the scope of those three activities and thus outside the Policies' Insuring Agreement.

To demonstrate an injury arose out of the ownership, maintenance, or use of insured property, the party seeking coverage must show the property's use was integrally related to the injury at the time of the accident. *Travelers Prop. Cas. Co. of Am. v. Farmers Ins. Exch.*, 240 P.3d 521, 523 (Colo. App. 2010). "In addition, to complete and satisfy the causal analysis, the [party seeking coverage] must show that the 'use' of the [property] and the injury are directly related or inextricably linked so that no independent significant act or non-use of the [property] interrupted the 'but[-]for' causal chain between the covered use of the [property] and the injury." *Id.* at 524, quoting *State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1264 (Colo. 2003).

The HOA's claims do not allege any activities by HT related to vacant land "but for" which the retaining wall would not have been damaged, nor do they allege any activities by HT arising out of the ownership, maintenance, or use of vacant land "but for" which the retaining wall would not have been damaged. Rather, the HOA's claims arise from HT's role as the developer of the residential development on the premises, not from its "ownership, maintenance or use" of vacant land. This conduct does not fall within the scope of the Limitation of Coverage to Designated Premises or Project endorsement and, therefore, is not covered. *Founders Commercial, Ltd. v. Trinity Universal Ins. Co.*, 176 S.W.3d 484 (Tex. App. 2004) is directly on point. There, the insured purchased CGL policies from Trinity that contained a "Limitation of Coverage to Designated Premises or Project" endorsement identical to Western's Policies. Just like the Policies here, the liability classification schedule of the policies in *Founders* identified four acres of "vacant land" at Westminster Plaza Drive and Richmond Avenue as the basis for the policies' premiums. The

insured was sued for trademark infringement and tendered the defense to Trinity, which denied

coverage and filed a declaratory judgment action, contending it had no duty to defend based on

the Designated Premises endorsement in the policies. The trial court determined Trinity had no

duty to defend and founders appealed.  The appellate court affirmed, concluding the Designated

Premises endorsement was not ambiguous: "There is only one reasonable interpretation offered by

the parties: ... that coverage is limited to injuries arising out of 'four acres' of 'vacant land' at

Westminster Plaza Drive and Richmond Avenue."

> Under the heading, 'FORMS APPLICABLE TO THIS COVERAGE PART,'" the
> declaration page of the policies expressly incorporates the designated premises endorse-
> ment into the policy, thus placing Founders on notice that coverage was limited to certain
> premises. The designated premises endorsement expressly warns the insured that it 'modi-
> fies insurance provided' under the 'commercial general liability coverage part' and that
> 'This Endorsement Changes the Policy. Please Read it Carefully.' Such plain language
> indicates a change in the premises covered from the original CGL policy....
>
> Moreover, as recognized above, the liability classification schedule is part of the policies
> and has meaning beyond simply providing a basis for the premiums charged. Although
> discounted by Founders, *the basis for the premiums charged is indicative of the parties'*
> *intent regarding what premises they agreed to be covered.* We hold that the policy, viewed
> in its entirety, unambiguously provides that coverage under the policy is limited to injuries
> arising out of 'four acres' of 'vacant land' at the corner of Westminster Plaza Drive and
> Richmond Avenue. Thus, unless the claims asserted by GRT arose out of 'four acres' of
> 'vacant land' at that intersection, Trinity has no duty to defend Founders in the underlying
> federal action.

*Id.*, 176 S.W.3d at 491-92.  The court concluded there was no coverage for or duty to defend the

underlying lawsuit because the injuries alleged "do not arise from conduct or activities on the

premises covered by the policies, *i.e.*, four acres of vacant land...." *Id.* at 492.  Similarly here, the

HOA's construction defect claims do not "arise out of" the "ownership, maintenance or use" of

the East Woodmen Property, which the liability classification schedule describes as "vacant land,"

and are therefore outside of the Policies' Insuring Agreement, as modified by the "Limitation of

Coverage to Designated Premises or Project" Endorsement. *See Essex Ins. Co. v. Hines*, No. C-08-125, 2009 U.S.Dist.LEXIS 20865, *12 (S.D.Tex. Mar. 16, 2009) (construing identical "Limitation of Coverage to Designated Premises or Project" endorsement and finding "construction work is not covered by the Policy" because it does not arise from "ownership, maintenance or use" of designated premises).

Moreover, the HOA's claims cannot arise from HT's "ownership, maintenance or use" of the designated premises, since the HOA alleged HT transferred ownership of the premises to the individual lot owners, other builders, and the HOA, and also alleged the HOA is responsible for maintenance of the Common Elements and other specific improvements within Willow Creek. (Exs. E, G-J, ¶¶3-4). Because the HOA's claims did not "arise out of" HT's "ownership, maintenance or use of the premises," there is no "unbroken causal chain," *see Kastner*, 77 P.3d at 1264 and thus no coverage.

### C.    Coverage for the HOA's claims is expressly excluded under the 2011-2012 and 2012-2013 Policies.

#### 1.    "Total Exclusion-Habitational New Construction" Endorsement.

Both Policies include the "Total Exclusion-Habitational New Construction" Endorsement:

> This insurance does not apply, and no duty to defend is provided by us for claims, 'suits,' actions, accusations or charges, nor to any loss, cost or expense ***arising out of, relating to or in any way connected with*** 'your operations,' 'your work' or 'your product' involving the development, construction, conversion and/or demolition of: ... any other type of residential structure including 'multiple unit' residential structures ... whether by any insured, an entity to which any insured owes an indemnity obligation, or any other entity. (Ex. A, WHIC_42; Ex. B, WHIC_107) [Emphasis added].

The underlying litigation arises out of the alleged defective construction of a residential development wherein the HOA alleged that "HT served as the developer and declarant of Willow Creek, was involved in the design, development, and construction of Willow Creek, including all

improvements within Willow Creek." (Exs. E, G-J, ¶4). These "improvements" include the retaining walls at issue, which are part of the residential development, and thus are "habitational new construction" within the exclusion. Accordingly, the HOA's construction defect claims "arise out of," "relate to," and are "connected with" HT's work involving the development and construction of residential structures. Although HT is expected to argue retaining walls are not within the "residential structures" and are not attached to any "residential structures," the exclusion provides that coverage is excluded for "claims" and for "any loss, cost or expense *arising out of, relating to or in any way connected with* ... 'your work' ... involving the development [or] construction" of the "residential structures" listed in the exclusion. (Ex. A, WHIC_42; Ex. B, WHIC_107). Because the HOA's claims for damage to the retaining walls are claims "arising out of" "relating to," and "connected with" HT's development and construction of the Willow Creek development, coverage for the HOA's claim is expressly excluded. It is immaterial whether the walls themselves are "residential structures."

### 2.    "Owned" and "fated" property Exclusions j.(1) and j.(2).

Both Policies contain Exclusions **j.(1)** and **j.(2)**, which exclude coverage for "property damage" to (1) "Property you own, rent, or occupy" and (2) "Premises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises." (Ex. A, WHIC_18; Ex. B, WHIC_80). The HOA's Complaints allege HT "served as the developer and declarant[7] of Willow Creek" and "sold the individual Lots within Willow Creek to various other developers

---

[7]A "declarant" of a common-interest community is someone who "as part of a common promotional plan, offers to dispose of to a purchaser such declarant's interest in a unit not previously disposed of to a purchaser," *i.e.*, an owner of units in the community. Colo. Rev. Stat. § 38-33.3-103(12)(a).

and/or homebuilders." (Exs. E, G-J, ¶4). The HOA did not allege HT did not own the property but merely acted as general contractor for construction on the property; instead, it alleged HT owned the units as the "declarant" and then sold them to others.

Therefore, to the extent the Complaints allege HT owned the Willow Creek development prior to its sale to other developers and/or homebuilders, any alleged "property damage" that occurred during the period of HT's ownership falls within the scope of Exclusion **j.(1)**. *See Taos Ski Valley, Inc. v. Nova Cas. Co.*, 705 Fed. Appx. 749, 753 (10th Cir. 2017) (**j.(1)** excluded coverage for remediation costs to land owned by insured; "To be covered, the liability cannot be for damage to property that the insured party owns, rents, or occupies."); *Stresscon Corp. v. Travelers Prop. Cas. Co.*, 373 P.3d 615, 638 (Colo. App. 2013) (**j.(1)** is unambiguous and excluded coverage for "property damage" to property owned by insured), *rev'd on other grounds*, 370 P.3d 140 (Colo. 2016). Further, because the HOA alleges HT "sold the individual Lots within Willow Creek to various other developers and/or homebuilders," any alleged "property damage," whether occurring before or after HT sold the individual lots within Willow Creek to third parties, falls within Exclusion **j.(2)**. *See Rieder v. Cherokee Ins. Co.*, 635 F.Supp. 699, 702-03 (E.D.Pa. 1986). The exception to Exclusion **j.(2)**, which provides it "does not apply if the premises are 'your work' and were never occupied, rented or held for rental by you," does not apply because the HOA's Complaints allege HT was the "declarant" who therefore "occupied" the premises before selling the lots to others. (Exs. E, G-J, ¶4). *See Genesis Ins. Co. v. BRE Props.*, 916 F.Supp.2d 1058, 1069-72 (N.D.Cal. 2013). Together, Exclusions **j.(1)** and **j.(2)** exclude all coverage for "property damage" to any improvements constructed on the property, regardless of whether the damage occurred while HT owned the property or after HT sold it to others.

### 3. "Faulty workmanship" Exclusion j.(6).

Both Policies contain Exclusion **j.(6)**, which bars coverage for "That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (Ex. A at WHIC_19; Ex. B at WHIC_81).[8] This is known as the "faulty workmanship" exclusion. *McGowan v. State Farm Fire & Cas. Co*., 100 P.3d 521, 525 (Colo. App. 2004). CGL policies generally exclude coverage for faulty workmanship as it is considered a business risk to be borne by the insured. *Id.* A CGL policy is "not intended to serve as a performance bond or a guaranty of goods or services." *Hartford Acc. & Indem. Co. v. Pacific Mut. Life Ins. Co.*, 861 F.2d 250, 253 (10th Cir. 1988). Exclusion **j.(6)** focuses on the repair of the insured's work and excludes coverage for costs incurred in repairing or replacing the defective work. *See McGowan*, 100 P.3d at 525-26; *Cool Sunshine Heating & Air Conditioning, Inc. v. American Family Mut. Ins. Co*., No. 14-cv-1637-WJM-MEH, 2014 U.S.Dist.LEXIS 174818, *11-*14 (D. Colo. Dec. 17, 2014); *Continental Western Ins. Co. v. Shay Constr., Inc.*, 805 F.Supp.2d 1125, 1132-33 (D. Colo. 2011).

Here, the only "property damage" alleged in the HOA's Complaints is to the retaining walls themselves, which was the insured's "work," and not to any other property. (Ex. E, ¶10; Ex. G, ¶11; Exs. H-I, ¶12; Ex. J, ¶23). There is no allegation of any damage to any property other than to the walls themselves. Consequently, Exclusion **j.(6)** excludes coverage for any "property damage" to the walls that occurred during construction, including any cost of replacing or repairing them. *See Advantage Homebuilding, LLC v. Maryland Cas. Co*., 470 F.3d 1003, 1012 (10th Cir. 2006) (Exclusion **j.(6)** "was intended to exclude coverage for the cost of restoring, repairing or

---

[8]The Policies define "Your work" as "**(1)** Work or operations performed by you or on your behalf; and **(2)** Materials, parts or equipment furnished in connection with such work or operations." (Ex. A at WHIC_30; Ex. B at WHIC_92).

replacing faulty workmanship on the part of the insured, its contractors, and subcontractors. More specifically, we conclude it was intended to exclude 'property damage' that directly or consequentially occurs from the faulty workmanship of the insured and its contractors/ subcontractors (*i.e.*, work that 'was incorrectly performed') while the work is ongoing."); *Hubbell v. Carney Bros. Constr.*, No. 05-cv-00026-CMA-KLM, 2013 U.S.Dist.LEXIS 68331, *20 (D. Colo. May 14, 2013); *Shay*, 805 F.Supp.2d, at 1132-33; *McGowan*, 100 P.3d at 525.

### 4.    "Products-Completed Operations Hazard" Exclusion Endorsement.

Although Exclusion **j.(6)** focuses on repair of the insured's work and "does not apply to 'property damage' included in the 'products-completed operations hazard,'"[9] both Policies contain Endorsements which expressly provide that "This insurance does not apply to ... 'property damage' included within the 'products-completed operations hazard.'" (Ex. A, WHIC_32; Ex. B, WHIC_94). The HOA claimed it "suffered damages resulting from construction defects beginning on or about the time of the first transfer of Lots to the Association's members and/or their predecessors in interest." (Ex. G, ¶10, Exs. H-I, ¶11, Ex. J, ¶12). Thus, all of the alleged damages occurred after the operations were completed and, thus, included are included within the "products-completed operations hazard," *see McGowan*, 100 P.3d at 525, and excluded. *See Martinez*, 576 P.2d at 1019-20; *Mt. Hawley Ins. Co. v. Creek Side at Parker Homeowners Assn.*, No. 11-CV-

---

[9]Both Policies provide that the 'products-completed operations hazard':

**a.**    Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:
**(1)**    Products that are still in your physical possession; or
**(2)**    Work that has not yet been completed or abandoned.... (Ex. A, WHIC_29; Ex. B, WHIC_91).

2658-RBJ, 2013 U.S.Dist.LEXIS 3405, *10-*11 (D. Colo. Jan. 8, 2013).[10]  The "products-completed operations hazard" exclusion, in conjunction with Exclusion **j.(6)**, operates to exclude all coverage for HOA's claims based on HT's alleged negligence in constructing the retaining walls, regardless of when the alleged damage occurred. *See Mt. Hawley* at *7-*8.

> **D.      Because there is no coverage for the HOA's claims, summary judgment should be granted for Western on HT's breach of contract and declaratory judgment claims.**

To the extent HT's Fourth Claim for Relief seeks "declaratory judgment of this Court fixing and determining the rights and obligations of HT and Western Heritage under the Policies and interpreting and resolving the issues arising under the Policies" (Complaint [Doc. 3], ¶43), Western requests that the Court enter summary judgment in its favor on HT's Fourth Claim for Relief because, as established above, there is no coverage under the HOA's claims against HT in Case No. 2016CV30271 under either Policies.

Because there is no coverage for the HOA's claims against HT in Case No. 2016CV30271 under either Policies, summary judgment should also be entered in favor of Western on HT's Third Claim for Relief for breach of contract. Because HT's Policies not only do not provide coverage for construction activities within the Insuring Agreement but also explicitly exclude coverage for construction activities, HT's breach of contract claim fails, since there can be no breach of contract by Western in the absence of any covered claim.

---

[10]As noted in *Martinez*, 576 P.2d at 1018 n.1, the "products-completed operations hazard" is "a separate insurable risk which requires calculation of an additional premium for such coverage." Here, both Policies' Declarations pages state "products-completed operations hazard" coverage is "EXCLUDED" and there are no applicable policy limits. (Ex. A, WHIC_12; Ex. B, WHIC_74).

**VI.    Because there is no coverage, summary judgment should also be granted for Western on HT's bad faith claims.**

Judgment should also be granted for Western on HT's Second Claim for Relief for common law bad faith and Third Claim for Relief for statutory bad faith because, without coverage for defense or indemnity for the underlying litigation, there are no covered benefits to which HT is entitled under the Policy. If Western did not deny payment of any covered benefits, it could not have **unreasonably** denied payment of those benefits. "The issue of coverage is a central predicate to any claim of bad faith breach of the insurance contract." *Cary v. United of Omaha Life Ins. Co.*, 91 P.3d 425, 427 (Colo. App. 2003), *rev'd other grounds*, 108 P.3d 288, 290 (Colo. 2005). Where there has been no breach of the insurance contract, there can be no claim for "bad faith" breach of contract. *See Lincoln Gen. Ins. Co. v. Bailey*, 224 P.3d 336, 342 (Colo. App. 2009) (where there was no breach of contract, bad faith claim was properly dismissed); *South Park Aggregates, Inc. v. Northwestern Natl. Ins. Co.*, 847 P.2d 218, 223 (Colo. App. 1992) (finding of breach of contract is condition precedent to finding of bad faith breach).

Accordingly, where a policy provides no coverage and the insured is not entitled to recover benefits, the insurer cannot be liable for unreasonable denial of or bad faith refusal to pay the claim and therefore judgment is appropriate on any bad faith claim arising from failure to pay benefits not owed.[11] The absence of coverage also requires judgment for Western on HT's claim under

---

[11]*See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage."); *DISH Network Corp. v. Arch Specialty Ins. Co.*, 989 F.Supp.2d 1137, 1155 (D. Colo. 2013) ("As DISH's breach of contract claims against Insurers fail, so too must its 'bad faith' claims."); *Farmers Alliance Mut. Ins. Co. v. Cutrone*, 448 F.Supp.2d 1226, 1234 (D. Colo. 2006)

§ 10-3-1116(1). Because HT is not entitled to "covered benefits" under either Policy, Western cannot be liable for unreasonably denying payment of benefits it does not owe. *See Jordan v. Safeco Ins. Co.*, 348 P.3d 443, 451 (Colo. App. 2013) (if no "covered benefits" are owed because there is no coverage, there can be no claim for "two times the covered benefits" under § 10-3-1116); *e.g.*, *Crazy Willy's, Inc. v. Valley Forge Ins. Co.*, No. 13-cv-03154-CMA-KMT, 2015 U.S. Dist.LEXIS 25494, *18-*19 (D. Colo. Mar. 2, 2015); *Sentry Ins. Mut. Co. v. St. Claire's Organics, Inc.*, No. 11-cv-00119-REB-BNB, 2012 U.S.Dist.LEXIS 117802, *9-*10 (D. Colo. Aug. 20, 2012). Summary judgment should therefore be granted for Western on HT's bad faith claims. *See MarkWest*, 558 F.3d at 1193.

## VII.    Conclusion.

Western's policies were never intended to provide liability coverage for HT's construction activities at the East Woodmen Property, only coverage for damages that arise from HT's "owner-ship, maintenance or use" of vacant land. This is confirmed not only by the complete exclusion of coverage for "Any and All Construction Activities" in the 2012-2013 Policy and by the "Total-Exclusion—Habitational New Construction" Endorsement and "Exclusion-Products-Completed Operations Hazard" Endorsement in the 2011-2012 and 2012-2013 Policies, but also by HT's ap-plications for the these Policies, in which HT represented the "hazard" to be covered was "vacant land" (Exs. C-D), and by the low premium of $750 HT paid for each Policy. For the foregoing reasons, Defendant Western Heritage Insurance Company respectfully requests that this Court grant it summary judgment on all of Plaintiff's claims for relief.

---

("Summary judgment in favor of an insurance company is appropriate for bad faith breach of ins-urance contract claims when a court determines that the insurance contract does not provide cover-age for the underlying facts.").

Respectfully submitted this 5th day of November, 2019.

/s/ Christine M. Kroupa
John M. Palmeri
Christine M. Kroupa
GORDON & REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
(303) 534-5160
jpalmeri@gordonrees.com
ckroupa@gordonrees.com
*Attorneys for Defendant Western Heritage
Insurance Company*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 5, 2019, a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to the following:

Dennis B. Polk, Esq.
Eric E. Torgerson, Esq.
HOLLEY, ALBERTSON & POLK, P.C.
1667 Cole Blvd., Ste. 100
Lakewood, CO 80401
dbp@haplaw.net
eet@haplaw.com

*/s/ Christine M. Kroupa*
John M. Palmeri
Christine M. Kroupa
GORDON & REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
(303) 534-5160
jpalmeri@gordonrees.com
ckroupa@gordonrees.com
*Attorneys for Defendant Western Heritage Insurance Company*