**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02174-DDD-KMT

HT SERVICES, LLC

Plaintiff,

v.

WESTERN HERITAGE INSURANCE COMPANY

Defendant.

---

**DEFENDANT WESTERN HERITAGE INSURANCE COMPANY'S
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. 26]**

---

Defendant Western Heritage Insurance Company (Western), by counsel, John M. Palmeri and Christine M. Kroupa of Gordon & Rees Scully Mansukhani, LLP, submits this Response to Plaintiff's Motion for Partial Summary Judgment [Doc. 26] pursuant to Fed.R.Civ.P. 56(b):

**I.      Introduction.**

Plaintiff's theory of insurance coverage in this case is premised on a fiction that is contradicted by the applicable insurance policies themselves, which expressly exclude all liability coverage for residential construction activities. The Western policies—for which Plaintiff paid only $750 per year in premiums—were issued and intended to cover only liability for "property damage" arising from the "maintenance, ownership or use" of Plaintiff's offices and of four acres of vacant land Plaintiff owned but subsequently developed into a residential subdivision without ever procuring liability coverage from Western for its construction activities on that land. Because the Western policies do not and were never intended to provide liability coverage for Plaintiff's

construction activities on its vacant land, Plaintiff's summary judgment motion should be denied. Concurrently with this Response, Western has cross-moved for summary judgment on all of Plaintiff's claims for relief.

## II.    Response to Plaintiff's statement of undisputed material facts.

1.     Admit, but deny Policy No. SCP0795120, issued for the policy period from July 11, 2010 through July 11, 2011, is relevant to the coverage issues in this case because any "occurrence" or "property damage" for which Plaintiff seeks insurance coverage could not have occurred until December 2011 at the earliest, outside of the period of Policy No. SCP0795120, when HT contracted with Dirt Cheap Grading & Landscaping, Inc., for the construction of retaining walls at the residential development at Willow Creek (Ex. F-1), whose faulty construction was alleged in the underlying construction defect litigation and who was also named as a defendant therein. (Exhibits G-J). Further, HT's counsel admitted to Western in a letter dated February 26, 2018 (Ex. F-2) that:

> The claimed occurrence was during the policy period of HT Services' policy no. SCP0841056, 7/11/2011 to 7/11/2012. Dirt Cheap Grading & Landscaping ('Dirt Cheap') contracted to build the walls on December 20, 2011. See Attachment 2, Dirt Cheap Contract. The landscaping walls in question were built in or around February, 2012. In this matter, the existence of the walls themselves is the claimed 'occurrence,' because Willow Creek claims that the fact that the walls were not engineered creates a safety hazard. Thus, the claimed occurrence was during the coverage period of Policy No. SCP0841056 between 7/1/2011 to 7/11/2012 because that is when the walls were built.

Western also objects to Plaintiff's Exhibit 1 as incomplete pursuant to FRE 106 and the rule of completeness, since it consists only of the Declarations pages and not the body of Policy No. SCP0795120. *See Echo Acceptance Corp. v. Household Retail Services, Inc.*, 267 F.3d 1068, 1089 (10th Cir. 2001) ("The rule of completeness, both at common law and as partially codified in Rule 106, functions as a defensive shield against potentially misleading evidence proffered by

an opposing party.").

In response, Western submits the entire 2010-2011 Policy, which states the only "premises" insured thereunder are HT's offices at 455 E Pikes Peak Avenue, Suite 100, Colorado Springs, CO 80903 (Exhibit N at WHIC_142), not the East Woodmen Road Property where the Willow Creek development is located and where the alleged "property damage" occurred. Because the East Woodmen Road Property is not a "designated premises" under the 2010-2011 Policy, there is no coverage for any "property damage" arising from the "ownership, maintenance or use" or from "operations necessary or incidental to those premises." *See Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F.Supp.2d 381, 389 (S.D.N.Y. 2008) ("The Designated Premises Endorsement is clearly a premises liability policy. Its purpose is to insure [the insureds] against liability incident to its ownership, maintenance, or use of the listed premises and operations necessary or incidental to those premises"). Moreover, the 2010-2011 Policy contains a "Total Exclusion— Habitational New Construction" endorsement (Ex. N at WHIC_153), discussed *infra* Part VI.C.1.

2.-3. Undisputed.

**III.   Statement of additional disputed facts.**

1.   From July 11, 2011 to July 11, 2012, HT was insured under a Commercial General Liability (CGL) Policy issued by Western, Policy No. SCP 0841056 (the 2011-2012 Policy). (Ex. A; Complaint [Doc. 3], ¶5).

2.   From July 11, 2012 to July 11, 2013, HT was insured under a CGL Policy issued by Western, Policy No. SCP 0895362 (the 2012-2013 Policy) (the 2011-2012 Policy and 2012-2013 Policy are herein referred to collectively as "the Policies"). (Ex. B; Complaint [Doc. 3], ¶5).

3.   The Policies insured two separate premises owned by HT: its offices, located at 455

E. Pikes Peak Avenue, Suite 100, Colorado Springs, Colorado, and vacant land located at "East Woodmen Road, Colorado Springs, Colorado, at the intersection of Shining Peak Lane and East Woodmen Road, Colorado Springs, Colorado" (the East Woodmen Property). (Ex. A, WHIC_5, 12, 33; Ex. B, WHIC_74, 97). Both policies describe the East Woodman Property as "Vacant Land—other than NFP." *Id.*[1]

    4.    HT's applications for the Policies, which were signed by HT's principal on its behalf, described the four acres of East Woodmen Property for which CGL coverage was sought as "Vacant Land." (Ex. C, WHIC_379, 382, 384; Ex. D, WHIC_405, 409-10).

    5.    HT paid a total premium of $750 for each policy. (Ex. A, WHIC_5; Ex. B, WHIC_67).

    6.    Both policies contained the following Insuring Agreement in Coverage Part A:

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**    The "bodily injury" or "property damage" occurs during the policy period.... (Ex. A, WHIC_15; Ex. B, WHIC_77).

---

[1] The Declarations pages of Policy No. SCP0795120 (Plaintiff's Ex. 1 at 3), issued for the policy period July 11, 2010 through July 11, 2011, similarly describes the property covered thereunder as "Vacant Land – other than NFP."

7. The Schedule lists the East Woodmen Property as the "designated premises"; no "project" is listed. (Ex. A, WHIC_33, Ex. B, WHIC_97). Both policies' Declarations pages describe the East Woodmen Property as "vacant land." (Ex. A, WHIC_12, Ex. B, WHIC_74).

8. Both Policies contain the following Endorsements:[2]

   a. "Limitation of Coverage to Designated Premises or Project", which insures property damage arising out of the ownership, maintenance or use of the premises (Ex. A, WHIC_33; Ex. B, WHIC_97);

   b. "Total Exclusion-Habitational New Construction", which precludes coverage for claims arising out of, relating to, or connected with your work in the development of mixed-use structures or any other type of residential structure (Ex. A, WHIC_42; Ex. B, WHIC_107);

   c. "Products-Completed Operations", which excludes coverage for property damage for completed work (Ex. A, WHIC_12, 32; Ex. B, WHIC_74, 94).

9. The 2012-2013 Policy contains three Endorsements that expressly provide coverage for "Any and All Construction Activities" is excluded:

   a. The "Exclusion-Designated Products Endorsement" states: "This insurance does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of any of 'your products' shown in the Schedule". (Ex. B, WHIC_95). The Schedule lists "Any and All Construction Activities" as "Designated Products." *Id.*

   b. The "Exclusion-Designated Work Endorsement" provides: "This insurance

---

[2] The language of each Endorsement will be discussed *infra* at pp. 10, 12, and 16.

- 5 -

> does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of 'your work' shown in the Schedule". (*Id*., WHIC_96). The Schedule lists "Any and All Construction Activities" as the "Description of your work." *Id.*

c. The "Exclusion-Designated Ongoing Operations Endorsement" provides:

> This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.
>
> The Schedule lists "Any and All Construction Activities" as the "Description of Designated Ongoing Operation(s)" and does not specify a "Specified Location." (*Id*., WHIC_99).

11. Sometime in 2011 or 2012, HT undertook development of the vacant land at the East Woodmen Property and constructed a residential development there known as Willow Creek, a common interest community for which HT was both declarant and developer. (Ex. E, ¶4).

12. In January 2016, Willow Creek CS Homeowners Association (the HOA) filed a lawsuit against HT and others in El Paso District Court, Colorado, Case No. 2016CV30271, alleging "HT served as the developer and declarant of Willow Creek, was involved in the design, development, and construction of Willow Creek, including all improvements within Willow Creek," and HT and others were negligent in the construction of the retaining walls at the Willow Creek residential development. (Ex. E; Complaint [Doc. 3], ¶¶4, 8-9).

13. The HOA filed four Amended Complaints against HT in Case No. 2016CV30271 (Exs. G-J), all of which contained the same allegations recited above.

14. Western denied coverage for the HOA's Complaints against HT on November 11, 2015 and March 21, 2018. (Exs. K, L; Complaint [Doc. 3], ¶15).[3]

15. On October 18, 2018, Western, through counsel, denied coverage for the HOA's claims against Terry Schooler and Schooler & Associates.[4] (Ex. M). The denial letter explained:

> The Policies were issued to HT Services for the classification description of 'Vacant Land.' The classification description contained on the declarations page of a policy controls and

---

[3] Plaintiff's assertion that "Western Heritage may not assert coverage defenses not stated in its March 21, 2018, denial of coverage letter" [Doc. 26 at 12] is incorrect as a matter of law. The insurance contract itself governs the obligations of the carrier to its insured. The statements and opinions of the insurance company's employees are insufficient to modify the Policy. Consequently, Western's letters cannot create coverage when the Policy explicitly forecloses it, nor does Western waive any policy provision concerning coverage by not relying on that provision in its communications to its insureds. *See Compass Insurance Co. v. City of Littleton,* 984 P.2d 606, 620 (Colo. 1999) (failure to raise joint venture exclusion did not waive that defense to coverage). As the Colorado Supreme Court recognized in *Hartford Live Stock Insurance Co. v. Phillips*, 372 P.2d 740, 742 (Colo. 1962), "The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, ***are not available to bring within the coverage of a policy risks not covered by its terms***, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture. Thus, while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, ***the coverage, or restrictions on the coverage, cannot be extended by the doctrine of waiver or estoppel***" (emphasis added). *See McGowan v. State Farm Fire & Casualty Co*., 100 P.3d 521, 526 (Colo. App. 2004) (same); *Bethel v. Berkshire Hathaway Homestate Insurance Co*., No. 17-cv-01456-CMA-KLM, 2019 U.S. Dist. LEXIS 13181, *12 (D. Colo. Jan. 28, 2019) ("Under Colorado law, it is 'well established' that 'the doctrines of implied waiver and estoppel, based upon the conduct or action of the insurer, are not available bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom.' It is uncontested that Defendant's defenses to Plaintiff's coverage claim in the instant case depend entirely on limitations 'which define the parameters of the coverage provided by the insurance policy' and are thus 'not subject to waiver.'") (quoting *McGowan*, 100 P.3d at 526) (citations omitted); *Crazy Willy's Inc. v. Valley Forge Insurance Co*., No. 13-cv-03154-CMA-KMT, 2015 U.S. Dist. LEXIS 25494, *15-*16 (D. Colo. Mar. 2, 2015) (rejecting as "legally erroneous" and "contrary to Colorado law" plaintiff's argument that "Under Colorado law, when an insurer denies coverage on specific grounds, it waives the right to later add additional defenses to coverage"; citing *McGowan*, 100 P.3d at 526); *RK Mechanical, Inc. v. Travelers Property Casualty Co*., 944 F.Supp.2d 1013, 1019 (D. Colo. 2011) ("the doctrines of waiver and estoppel cannot create coverage where none exists under the policy.").

[4] Terry Schooler and Schooler & Associates claimed they were members of HT.

limits coverage to that specified description. Accordingly, the Policies only provide coverage with respect to vacant land.

The intended scope of coverage afforded under the Policies is evidenced by the fact that each of the Policies includes a Limitation of Coverage To Designated Premises or Project endorsement.... (*Id.* at 5).

## IV.   Standard of review.

Where the party with the burden of proof on an issue at trial moves for summary judgment, the standard is significantly higher than the standard applied to the party without that burden. Plaintiff not only has the burden under Colorado law to prove the loss falls within the coverage grant of the Policy's Insuring Agreement, *see Colorado Intergovernmental Risk Sharing Agency v. Northfield Insurance Co.*, 207 P.3d 839, 842 (Colo. App. 2008), it also has the burden to prove its case at trial. For this reason, the ordinary summary judgment standards do not apply to a motion filed by the party with the burden of proof at trial. When "the moving party has the burden of proof, a more stringent summary judgment standard applies. Thus, if the moving party bears the burden of proof, to obtain summary judgment, it cannot force the nonmoving party to come forward with 'specific facts showing there [is] a genuine issue for trial' merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citations omitted). "Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.* (citation omitted). Because the jury does not have to believe the moving party's evidence, it must make a showing sufficient "for the court to hold that no reasonable trier of act could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (citation omitted). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to

disbelieve it. Anything less should result in denial of summary judgment." *Id*. at 1154 (citation omitted).

V. **Summary judgment for Plaintiff should be denied because coverage for the underlying construction defect lawsuit is outside of the Insuring Agreement and expressly excluded by the Western Policies.**

   A. **There is no coverage for the HOA's claims under the 2012-2013 Policy, which expressly excludes coverage for "Any and All Construction Activities."[5]**

HT nevertheless argues this exclusion does not apply because the underlying complaints alleged it "designed" the retaining walls, and because "The Policy does not contain an exclusion for architectural, engineering or other professional services." [Doc. 26 at 16-17]. However, the Policy does not cover "professional services" because the Declarations page establishes the "Professional Liability Coverage Form" is not included in the Policy so "professional liability" is "NOT COVERED." (Ex. B, WHIC_67). Plaintiff's argument improperly infers the existence of coverage from the absence of an exclusion, when there is nothing in the Insuring Agreement that covers "professional services" in the first place.  Moreover, this argument simply presumes, without support, that "design" can only be performed by architects or engineers and not by contractors, notwithstanding the underlying complaints allege HT, a contractor, "designed" the retaining walls. Plaintiff's argument further presumes "design" is not part of "Any and All Construction Activities," thereby ignoring the broad and comprehensive terms "any and all" and "activities." See *Mountain Stone Co. v. H.W. Hammond Co*., 564 P.2d 958, 961 (Colo. App. 1977) ("any" and "all" have been described as "the most comprehensive words in the English language."). Further, in *El Rincon Supportive Services Organization, Inc. v. First Nonprofit Mutual*

---

[5] Western incorporates the argument in Part V.A. of its Cross-Motion for Summary Judgment [Doc. 21] at 8-9.

- 9 -

*Insurance Co.*, 803 N.E.2d 532, 538 (Ill. App. 2004), the court construed a policy exclusion for "any and all construction activities" to encompass *all* activities relating to construction and which are necessary for construction. Because 'design' of a structure is necessary for its construction, it is necessarily encompassed within the phrase "*any and all* construction activities."

Either way, Plaintiff's argument why the multiple exclusions for "Any and All Construction Activities" do not apply necessarily fails. If "design" is a "professional service," then it is not within the Insuring Agreement and thus not covered. If it is a "construction activity," then it is expressly excluded from coverage. Because HT's alleged design and construction of the retaining walls amounted to "construction activities" (Ex. E, ¶¶ 12-15, 20), any coverage for the HOA's construction defect claims is expressly excluded under the 2012-2013 Policy.

### B.   Coverage for the HOA's claims is not within the Insuring Agreement of the 2011-2012 and 2012-2013 Policies.[6]

Both Policies contain the "Limitation of Coverage to Designated Premises or Project" Endorsement (Ex. A, WHIC_33; Ex. B, WHIC_97). This Endorsement modified the Insuring Agreement of the Policies' Commercial General Liability Coverage Part to provide: "This insurance applies only to ... 'property damage' ... arising out of: 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or 2. The project shown in the Schedule." HT mischaracterizes this Endorsement, which modifies the Insuring Agreement, as an "exclusion," thereby improperly shifting its burden to show the loss falls within the coverage grant of the Insuring Agreement to Western. *See Colorado Intergovernmental Risk*, 207 P.3d at 842.

---

[6] Western incorporates the argument in Part V.B. of its Cross-Motion for Summary Judgment [Doc. 21] at 10-12.

HT initially argues "The Policy does not define 'premises.'" [Doc. 26 at 16]. This is irrelevant because the Policies specifically and unambiguously define the insured "premises" as "East Woodmen Road, Colorado Springs, Co; at the Intersection of Shining Peak Lane and East Woodmen Road, Colorado Springs, CO." (Ex. A, WHIC_33; Ex. B, WHIC_97). Thus, the Policies only cover "property damage" arising out of either the "ownership, maintenance or use of the premises" or "operations necessary or incidental to those premises," which are defined as "East Woodmen Road, Colorado Springs, Co; at the Intersection of Shining Peak Lane and East Woodmen Road, Colorado Springs, CO." Although HT correctly argues "The complaint alleges property damage in Willow Creek," which is located at the Designated Premises, it ignores the fact that the liability classification schedule of both Polices describe the Designated Premises (the East Woodmen Property) as "vacant land." (Ex. A, WHIC_12, Ex. B, WHIC_74). The construction defects alleged by the HOA, however, do not arise from either the "ownership, maintenance or use of" vacant land or from "operations necessary or incidental to" vacant land. As the court stated in *Founders Commercial, Ltd. v. Trinity Universal Insurance Co.*, 176 S.W.3d 484, 491-92 (Tex. App. 2004), "the liability classification schedule is part of the policies and has meaning beyond simply providing a basis for the premiums charged.... [T]he basis for the premiums charged is indicative of the parties' intent regarding what premises they agreed to be covered." Because the HOA's construction defect claims do not "arise out of" the "ownership, maintenance or use" of "vacant land," they are outside of the Policies' Insuring Agreement, as modified by the "Limitation of Coverage to Designated Premises or Project" Endorsement. *Id*. at 492. *See Essex Insurance Co. v. Hines*, No. C-08-125, 2009 U.S.Dist.LEXIS 20865, *12 (S.D.Tex. Mar. 16, 2009) (construing identical "Limitation of Coverage to Designated Premises or Project" endorsement and finding

- 11 -

"construction work is not covered by the Policy" because it does not arise from "ownership, maintenance or use" of designated premises). Because HT has not met its burden to show the HOA's claim is within the Policies' Insuring Agreement, its summary judgment motion should be denied.

### C. Coverage for the HOA's claims is expressly excluded under the 2011-2012 and 2012-2013 Policies.

#### 1. "Total Exclusion-Habitational New Construction" Endorsement.[7]

This exclusion provides that coverage is excluded for "claims" and for "any loss, cost or expense ***arising out of, relating to or in any way connected with*** ... 'your work' ... involving the development [or] construction" of the "residential structures" listed in the exclusion, which include "any other type of residential structure." (Ex. A, WHIC_42; Ex. B, WHIC_107) (emphasis added).

HT argues this exclusion does not apply because the retaining walls are not "residential structures," but HT ignores the language "arising out of, relating to in any way connected with," which places the retaining walls within "your work", not only on the "'multiple unit' residential structures" that comprise the Willow Creek development, but also on "any other type of residential structure." *See Management Specialists, Inc. v. Northfield Insurance Co.*, 117 P.3d 32, 37 (Colo. App. 2004) ("In the context of whether a particular loss comes within policy coverage, 'arising out of' has been construed to create a 'but for' test."). Applying this language to the underlying Complaints here, they clearly allege HT's construction of the retaining walls "arise[s] out of," "relate[s] to," and is "connected with" HT's construction of "residential structures" at the Willow Creek development. Each Complaint alleges HT "was involved in the design, development, and

---

[7] Western incorporates the argument in Part V.C.1. of its Cross-Motion for Summary Judgment [Doc. 21] at 13-14.

construction of Willow Creek, including all improvements within Willow Creek", which is a "residential development." (Exs. E, G-J at ¶¶ 2, 4). The HOA further alleged HT "constructed, designed, provided materials, facilitated repairs, and/or played other significant roles in the design, development, construction, and repair of the improvements at Willow Creek." (Ex. E, ¶12; Ex. G, ¶13; Exs. H-I, ¶14; Ex. J, ¶15). Because the Complaints allege these "improvements," which include the retaining walls that were the subject of the HOA's construction defect lawsuit, "aris[e] out of," "relat[e] to," and are "connected with" HT's construction of "residential structures" at the Willow Creek development, the HOA's claims fall squarely within the "Total Exclusion-Habitational New Construction" Endorsement and are excluded from coverage. Accordingly, it is immaterial whether the walls themselves are "residential structures."

### 2.   "Owned" and "alienated" property Exclusions j.(1) and j.(2).[8]

HT argues that "Construed broadly, the Association alleges damage to property of third parties, and does not 'solely and entirely' allege damage to 'premises' that HT sold, gave away or abandoned." [Doc. 26 at 13]. The HOA's Complaints directly refute this contention as they allege HT was the "declarant" who "sold the individual Lots within Willow Creek to various other developers and/or homebuilders." (Exs. E, G-J at ¶4). *See* Colo. Rev. Stat. § 38-33.3-103(12)(a) ("declarant" is someone who "as part of a common promotional plan, offers to dispose of to a purchaser such declarant's interest in a unit not previously disposed of to a purchaser"). Because Willow Creek is a common interest community (Ex. E, G-J, ¶¶1-3), its lots and common areas were initially owned by HT as the declarant, which subsequently transferred them to the HOA and

---

[8] Western incorporates the argument in Part V.C.2. of its Cross-Motion for Summary Judgment [Doc. 21] at 14-15.

- 13 -

others. *See* Colo. Rev. Stat. §§ 38-33.3-201, 38-33.3-205, 38-33.3-303. Because the HOA's Complaint alleged not only that HT was the prior owner of the property as the "declarant" who owned and therefore "occupied" the property before selling the lots to others, but also that HT sold the premises and the alleged "property damage"' arises out of those premises, coverage is excluded by both Exclusions **j.(1)** and **j.(2)**. *See Taos Ski Valley, Inc. v. Nova Casualty Co.*, 705 Fed. Appx. 749, 753 (10th Cir. 2017) (applying Exclusion **j.(1)**; "To be covered, the liability cannot be for damage to property that the insured party owns, rents, or occupies."); *Stresscon Corp. v. Travelers Property Casualty Co.*, 373 P.3d 615, 638 (Colo. App. 2013) (**j.(1)** is unambiguous and excluded coverage for "property damage" to property owned by insured), *rev'd on other grounds*, 370 P.3d 140 (Colo. 2016); *Rieder v. Cherokee Insurance Co.*, 635 F.Supp. 699, 702-03 (E.D.Pa. 1986) ("property damage," whether occurring before or after insured sold the property to third parties, falls within Exclusion **j.(2)**).

### 3. "Faulty workmanship" Exclusion j.(6).[9]

HT's argument why this exclusion does not apply is difficult to fathom since it is not distinctly articulated, and ignores Colorado case law construing and applying this exclusion, particularly *McGowan v. State Farm Fire & Casualty Co.*, 100 P.3d 521, 525 (Colo. App. 2004), *Continental Western Insurance Co. v. Shay Construction, Inc.*, 805 F.Supp.2d 1125, 1132-33 (D. Colo. 2011), *Hubbell v. Carney Bros. Construction*, No. 05-cv-00026-CMA-KLM, 2013 U.S. Dist. LEXIS 68331, *20 (D. Colo. May 14, 2013), and *Cool Sunshine Heating & Air Conditioning, Inc. v. American Family Mutual Insurance Co.*, No. 14-cv-1637-WJM-MEH, 2014 U.S. Dist.

---

[9] Western incorporates the argument in Part V.C.3. of its Cross-Motion for Summary Judgment [Doc. 21] at 16-17.

LEXIS 174818, *11-*14 (D. Colo. Dec. 17, 2014), all of which recognize Exclusion **j.(6)** excludes coverage for any "property damage" to the insured's "work" that was "incorrectly performed on it" during construction, including any cost of replacing or repairing the work. Both Policies define "your work" as "**(1)** Work or operations performed by you or on your behalf; and **(2)** Materials, parts or equipment furnished in connection with such work or operations." (Ex. A, WHIC_30; Ex. B, WHIC_92).

In construing an identical exclusion, the Colorado Court of Appeals in *McGowan* found it "is written in clear and specific language and is unambiguous," that CGL policies "normally exclude coverage for faulty workmanship based on the rationale that poor workmanship is considered a business risk to be borne by the policyholder, rather than a 'fortuitous event' entitling the insured to coverage." *McGowan*, 100 P.3d at 525. Hence, where liability claimants are "seeking to recover the expenditures they were required to make to repair the damage caused by [the insured's] faulty and incomplete work ... their claims fall squarely within" the "faulty workmanship" Exclusion **j(6)**. *Id*. *See Shay Construction*, 805 F.Supp.2d, at 1132-33. Therefore, Exclusion **j.(6)**, is directly applicable to the HOA's construction defect claims against HT as the HOA alleged the retaining walls, which HT constructed and which were therefore its "work" (Ex. E, ¶12; Ex. G, ¶13; Exs. H-I, ¶14; Ex. J, ¶15), were negligently constructed, resulting in numerous defects in HT's "work." (Ex. E, ¶10; Ex. G, ¶11; Exs. H-I, ¶12; Ex. J, ¶13). Because HT offers no contrary interpretation of the underlying pleadings and no reason why Exclusion **j(6)** should not apply to the HOA's claims in this case, which are indistinguishable from the claims asserted in *McGowan*, summary judgment for HT should be denied..

### 4. "Products-Completed Operations Hazard" Exclusion Endorsement.[10]

The Policies expressly exclude coverage for the "Products-Completed Operations Hazard" (Ex. A, WHIC_12, 0032; Ex. B, WHIC_74, 94), which is defined to include all "property damage" "occurring away from premises you own or rent and arising out of ... 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned." (Ex A, WHIC_29; Ex. B, WHIC_91). HT seeks to avoid this exclusion by asserting the HOA's "complaint does not 'solely and entirely' allege that the property damage arose out of completed work or operations performed by or on behalf of HT." [Doc. 26 at 16].

This assertion is belied by the HOA's Complaints, allege the HOA "has suffered damages resulting from construction defects ***beginning on or about the time of the first transfer of Lots*** to the Association's members and/or their predecessors in interest. These damages are continuing." (Ex. E, ¶9; Ex. G, ¶10; Exs. H-I, ¶11; Ex. J, ¶12) (emphasis added). *See Martinez, v. Hawkeye-Security Insurance Co.*, 576 P.2d 1017, 1018 n.1 (Colo. 1978) (the "products-completed operations hazard" is "a separate insurable risk which requires calculation of an additional premium for such coverage"). The "Products-Completed Operations Hazard" provides that "'your work' will be deemed completed at the earliest of the following times":

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

---

[10] Western incorporates the argument in Part V.C.4. of its Cross-Motion for Summary Judgment [Doc. 21] at 17-18.

> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. (Ex A, WHIC_29; Ex. B, WHIC_91).

As shown above, the HOA claimed it "suffered damages resulting from construction defects beginning on or about the time of the first transfer of Lots to the Association's members and/or their predecessors in interest." (Ex. E, ¶9; Ex. G, ¶10, Exs. H-I, ¶11, Ex. J, ¶12). All of the alleged "property damage" necessarily occurred after the "work" was completed and after it had "been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." Because the alleged "property damage" arose "solely and entirely" from HT's "work," it is included within the "Products-Completed Operations Hazard," *see McGowan*, 100 P.3d at 525, and is excluded from coverage. *See Martinez*, 576 P.2d at 1019-20; *Mount Hawley Insurance Co. v. Creek Side at Parker Homeowners Association*, No. 11-CV-2658-RBJ, 2013 U.S.Dist.LEXIS 3405, *10-*11 (D. Colo. Jan. 8, 2013). The "Products-Completed Operations Hazard" exclusion, in conjunction with Exclusion **j.(6)**, operates to exclude *all* coverage for HOA's claims based on HT's alleged negligence in constructing the retaining walls, regardless of when the alleged damage occurred. *See Mount Hawley* at *7-*8.

## VII. Conclusion.

To the extent HT's Fourth Claim for Relief seeks "declaratory judgment of this Court fixing and determining the rights and obligations of HT and Western Heritage under the Policies and interpreting and resolving the issues arising under the Policies" (Complaint [Doc. 3], ¶43), HT's motion for partial summary judgment should be denied because, as established above, there is no coverage under the HOA's claims against HT in Case No. 2016CV30271 under either the 2010-2011 Policy, 2011-2012 Policy, or 2012-2013 Policy.

WHEREFORE, Defendant Western Heritage Insurance Company respectfully requests Plaintiff's motion for partial summary judgment be DENIED.

Respectfully submitted this 5th day of November, 2019.

                                            *s/Christine M. Kroupa*
                                            John M. Palmeri
                                            Christine M. Kroupa
                                            GORDON & REES SCULLY MANSUKHANI, LLP
                                            555 Seventeenth Street, Suite 3400
                                            Denver, Colorado 80202
                                            (303) 534-5160
                                            jpalmeri@gordonrees.com
                                            ckroupa@gordonrees.com
                                            *Attorneys for Defendant Western Heritage*
                                            *Insurance Company*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on November 5, 2019, a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to the following:

Dennis B. Polk, Esq.
Eric E. Torgerson, Esq.
HOLLEY, ALBERTSON & POLK, P.C.
1667 Cole Blvd., Ste. 100
Lakewood, CO 80401
dbp@haplaw.net
eet@haplaw.com

               <u>s/Christine M. Kroupa</u>
               John M. Palmeri
               Christine M. Kroupa
               GORDON & REES SCULLY MANSUKHANI, LLP
               555 Seventeenth Street, Suite 3400
               Denver, Colorado 80202
               (303) 534-5160
               jpalmeri@gordonrees.com
               ckroupa@gordonrees.com
               *Attorneys for Defendant Western Heritage*
               *Insurance Company*