**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:19-cv-02174-DDD-KMT

HT SERVICES, LLC,

   Plaintiff,

v.

WESTERN HERITAGE INSURANCE COMPANY,

   Defendant.

## ORDER

    Before the court are cross motions for summary judgment filed by Plaintiff HT Services, LLC ("HT"), Doc. 26, and Defendant Western Heritage Insurance Company ("Western"), Doc. 27, as well as HT's motion to certify a question to the Supreme Court of Colorado, Doc. 34. Western issued insurance policies to HT that excluded coverage for suits "arising out of, relating to, or in any way connected with [the] construction" of a "residential structure." Each motion presents the same, relatively straightforward question of insurance-policy interpretation: was Western obligated to defend HT in a suit by a homeowners' association for negligent construction of a retaining wall around residential structures given these exclusions? The answer is no, so the court **DENIES** HT's partial motion for summary judgment, Doc. 26, **GRANTS** Western's motion for summary judgment, Doc. 27, and **DENIES** HT's motion to certify, Doc. 34.

## BACKGROUND

If *Hamlet* was about a play within a play, this case, like all duty-to-defend insurance cases, is about a more prosaic lawsuit within a lawsuit.

Western issued HT three concurrent commercial general liability insurance policies: one from July 11, 2010 to July 11, 2011 (the "2010-11 Policy"); the second from July 12, 2011 to July 11, 2012 (the "2011-12 Policy"); and the third from July 12, 2012 to July 11, 2013 (the "2012-13 Policy") (collectively, the "Policies"). Doc. 26 at 3, ¶ 1; Doc. 27 at 2, ¶¶ 1–2; Doc. 3 at 2, ¶¶ 1–2. The Policies insured two properties owned by HT in Colorado Springs: its offices on Pikes Peak Avenue and vacant land located on East Woodmen Road. Doc. 28 at 3–4, ¶ 3; Doc. 29 at 1, ¶ 3. Each policy generally obligated Western to "pay those sums that [HT] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Doc. 28-1 at WHIC_0015; Doc. 28-2 at WHIC_0077; Doc. 28-15 at WHIC_0124. The Policies explained, however, that "[Western] will have no duty to defend [HT] against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Doc. 28-1 at WHIC_0015; Doc. 28-2 at WHIC_0077; Doc. 28-15 at WHIC_0124.

HT eventually developed a residential community on the property at East Woodmen Road. Doc. 27 at 4, ¶ 10; Doc. 30 at 3, ¶10. In January 2016, the homeowners' association for that community filed suit against HT for negligent design and construction of improvements at Willow Creek. Doc. 28-5 at ¶¶ 13, 19. In its complaint, Willow Creek alleged that HT was the developer of the residential community and that HT "defectively designed and/or constructed retaining walls" when it built the residences at Willow Creek. Doc. 28-5 at ¶ 4. Willow Creek alleged that HT "breached [its] dut[y] owed to [Willow Creek] by negligently,

carelessly, tortuously, and wrongfully failing to use reasonable care in the design and/or construction of" the retaining walls. *Id.* at ¶ 14. The construction of the retaining walls at issue occurred sometime after December 2011. Doc. 26 at 3, ¶ 3; Doc. 26-11 at 2; Doc. 27 at 4–5, ¶ 12.

After Willow Creek filed suit, HT requested Western defend and indemnify HT. Doc. 26 at 3, ¶ 3; Doc. 28 at, ¶3. Western denied coverage, and this lawsuit followed. HT asserts that Western had a duty to defend it in the Willow Creek lawsuit and asserts claims for declaratory relief, breach of contract, and insurance bad faith. Doc. 3 at ¶¶ 18–43. HT moved for partial summary judgment on its claim for declaratory relief, which seeks a determination of its rights under the Policies. Doc. 26. Western moved for summary judgment on all of HT's claims, arguing that because Willow Creek's suit didn't fall within the ambit of the Policies, judgment is proper on each of HT's claims. Doc. 26. HT likewise moved for an order certifying a question to the Supreme Court of Colorado whether Colo. Rev. Stat. § 13-20-808—which applies to insurance policies issued to "construction professionals"—required Western to defend HT in the Willow Creek suit. Doc. 34.

## DISCUSSION

### I. The Cross Motions for Summary Judgment

The parties each move for summary judgment under Federal Rule of Civil Procedure 56. Under Rule 56, the court will grant the cross-motions for summary judgment "if but only if the evidence reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009).

3

## A. The Duty to Defend and Insurance Contracts

The cross-motions for summary judgment implicate two principles of Colorado[1] insurance law: insurance-policy interpretation and an insurer's duty to defend its insured.

Insurance policies are "merely [] contract[s] that courts should interpret in line with well-settled principles of contract interpretation." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). So like any contract, the terms of an insurance policy should be given their "plain and ordinary meaning" within the context of the whole policy. *Id.* "Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage." *Id.* If a provision of the policy is truly ambiguous, however, Colorado law tips the interpretative scales in favor of the insured: Colorado courts "construe ambiguous provisions against the insurer and in favor of providing coverage to the insured." *Id.* The interpretation of an insurance policy is a question of law. *Id.*

The duty to defend requires an insurer to defend its insured against any pending claims subject to the relevant insurance policy. *Id.* To determine whether a duty to defend exists, a court "must look no further than the four corners of the underlying complaint." *Id.* If the facts alleged in the complaint trigger coverage under the policy, the insurer must defend its insured. *Id.* And how must a court construe the facts in the underlying complaint? Against the insurer: "an insurer is not excused from th[e] duty [to defend] 'unless there is *no* factual or legal basis

---

[1] In this diversity case, the parties agree that Colorado law governs their dispute. The court thus "appl[ies] Colorado law and interpret[s the] insurance policies as a Colorado court would." *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006).

4

on which the insurer might eventually be held liable to indemnify the insured.'" *Id.* (emphasis added); *see also Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991) ("An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy."). Whether a duty to defend exists under the four-corners rule, like the interpretation of an insurance policy, is a question of law. *Am. Econ. Ins. Co. v. Schoolcraft*, 551 F. Supp. 2d 1235, 1239 (D. Colo. 2007).

### B. The Claim for Declaratory Judgment

The claim for declaratory judgment seeks a determination of HT's rights under the Policies. Was Western's duty to defend triggered by Willow Creek's complaint? The short answer is no. There is no reasonable interpretation of Willow Creek's complaint that would require coverage under the policies.

At the outset, it isn't clear from the parties' motions which of the Policies is the relevant one. HT appears to argue that, because Willow Creek's complaint "does not allege dates of negligent conduct or property damage," the four-corners rule requires the court to consider whether coverage is triggered under *any* of the Policies between the parties. Doc. 29 at 2, ¶ 11. That is, HT argues that the court can't consider extrinsic evidence to decide the antecedent question to the duty-to-defend analysis: which insurance policy temporally applies to the parties' dispute? But that's not the law. The four-corners rule limits the court's analysis to the "four corners of the underlying complaint" only for the question whether the allegations in the underlying complaint trigger an insurer's duty to defend under the *relevant* policy. *See Cyprus*, 74 P.3d at 299. But it doesn't preclude a court from considering extrinsic evidence to deter-

mine which one is the relevant policy. The court will thus consider undisputed extrinsic evidence presented by the parties to determine which of the Policies apply here. HT admits that it entered into a subcontract for the retaining walls at Willow Creek in December 2011. Doc. 30 at 3, ¶ 11. This admission rules out, at a minimum, the 2010-11 policy because the conduct must have occurred after July 11, 2011. So the Court will consider only the 2011-12 and 2012-13 policies.[2]

Willow Creek's complaint alleged that HT "defectively designed and/or constructed retaining walls" during the development of Willow Creek; "breached the duties owed to [Willow Creek] by negligently, carelessly, tortiously, and wrongfully failing to use reasonable care in the design and/or construction of the improvements at Willow Creek"; and that HT caused Willow Creek "damages resulting from [these] construction defects." Doc. 28-5 at ¶¶ 4, 9–10, 13. These allegations clearly fall within several exclusions in the 2011-12 Policy and the 2012-13 Policy. Or more to the point, there is no reasonable interpretation of these allegations that would trigger coverage under the 2011-12 or 2012-13 policies.

First, the 2011-12 Policy and 2012-13 policy excluded from coverage any activities relating to "Habitational New Construction" such as the construction of the retaining walls:

> This insurance does not apply, and no duty to defend is provided by us for claims, "suits," actions, accusations or charges, nor to any loss, cost or expense arising out of, relating to or in any way connected with "your operations,"

---

[2] Even if the 2010-11 Policy applied, the result would be the same. Both policies contain the same Habitational New Construction exclusion as the 2011-12 Policy, discussed below, which excludes from coverage losses related to the construction of residential structures.

6

> "your work" or "your product" involving the development, construction, conversion and/or demolition of:
>
> 1. "mixed-use" structures;
>
> 2. condominiums;
>
> 3. town homes; or
>
> 4. any other type of residential structure including "multiple unit" residential structures:
>
> whether by any insured, an entity to which any insured owes an indemnity obligation, or any other entity.

Doc. 28-1 at WHICH_0042; Doc. 28-2 at WHICH_0107. The 2011-12 Policy and 2012-13 Policy define "your work" to mean "work or operations performed by or on your behalf; and materials, parts or equipment furnished in connection with such work or operations." Doc. 28-1 at WHICH_0030; Doc. 28-2 at WHICH_0092.

A retaining wall is not itself a "residential structure." But the Habitational New Construction exclusion applies to activities "relating to or in any way connected with" the construction of residential structures. This scope is broad and by its terms includes construction *related to* the residential structure. *See Gergel v. High View Homes, LLC*, 996 P.2d 233, 236 (Colo. App. 1999) ("The inclusion of the phrase 'relating to' in the warranty indicates that the scope of the arbitration provision is broad and inclusive, rather than narrow and exclusive."). The retaining wall, unquestionably, was constructed as part of the development of the Willow Creek residential community and thus fits within this exclusion.

Second, the 2011-12 and 2012-13 policies excluded damages arising from faulty workmanship: "This insurance does not apply to 'property damage' to [t]hat particular part of any property that must be restored,

7

repaired or replaced because 'your work' was incorrectly performed on it." Doc. 28-1 at WHIC_0019, ¶ 2.j.(6); Doc. 28-2 at WHIC_0081, ¶ 2.j.(6). The allegations in Willow Creek's complaint that it had suffered damages due to HT's construction of the retaining walls falls within this exclusion. *See* Doc. 28-5 at ¶ 10. In *McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 525 (Colo. App. 2004), the Colorado court held that a faulty-workmanship provision like the one at issue here did not require an insurer to defend its insured in a suit for damages to repair mistakes made in construction of the insured's home. Like the underlying-plaintiff in *McGowan*, Willow Creek seeks "money damages for the cost of repairing all property damage and construction defects." Doc. 28-5 at 4.

Together, these exclusions[3] evince the parties' clear intent to exclude from coverage any loss caused by construction, or construction-related activities, HT performed on the properties. There is no plausible reading of the underlying complaint that would trigger coverage. One would have to do violence to its unambiguous allegations—which all fundamentally concern HT's allegedly negligent construction—to rule otherwise. So Western had no duty to defend HT in Willow Creek's suit. Judgment is thus proper in Western's favor on HT's claim for declaratory relief.

HT argues that Colo. Rev. Stat. § 13-20-808 requires a broad construction of the Policies in favor of HT because HT is a "construction professional" within the meaning of that Section. *E.g.*, Doc. 30 at 6–7. But HT is wrong that Section 13-20-808 applies here.

---

[3] Western cites additional exclusions that it argues apply, but because the two aforementioned exclusions are dispositive of the issue, the court needn't consider the alternative exclusions cited by Western.

8

Section 13-20-808 was enacted in response to *General Security Indemnity Company of Arizona v. Mountain States Mutual Casualty Company,* 205 P.3d 529 (Colo. App. 2009), which gave a narrow interpretation to the term "accident" in an insurance policy issued to a construction professional. *Id.* at 533–36; *see also* Colo. Rev. Stat. § 13-20-808 ("The decision of the Colorado court of appeals in *General Security Indemnity Company of Arizona* . . . does not properly consider a construction professional's reasonable expectation that an insurer would defend the construction professional against an action or notice of claim contemplated by this [statute]."). As a result, Section 13-20-808 requires courts to interpret "insurance policies issued to construction professionals" in cases involving "coverage for damages arising out of construction defects" "broadly for the insured." *Id.* § 13-20-808(1)(a)(I), (1)(a)(III), (b)(I). Although Section 13-20-808 doesn't define "construction professional[]," it defines "insurance policy" as "a contract of insurance that covers occurrences of damage or injury during the policy period and insures a construction professional for liability arising from construction-related work." *Id.* §13-20-808(1)(d).

Section 13-20-808 doesn't apply here. Most significantly, none of the Policies were a "liability insurance policy" within the meaning of the statute, because they didn't "cover[] occurrences of damage … for construction-related work." *Id.* As explained, the Policies expressly *excluded* from coverage any damages resulting from construction, or construction-related activities, of residential structures. And the 2012-13 Policy expressly excluded "any and all construction activities" from coverage. So even assuming HT was a "construction professional," Section 13-20-808 does not apply because the Policies aren't the kind of liability insurance policies it applies to.[4] Section 13-20-808 doesn't change the

---

[4]   Even if the Policies here were governed by this Section, it is unlikely

conclusion that the 2011-12 Policy and the 2012-13 Policy did not require Western to defend HT in the underlying suit.

### C. The Claims for Breach of Contract and Bad Faith

HT does not dispute that, if it had no right to coverage under the Policies, then its claims for breach of contract and insurance bad faith necessarily fail. Doc. 30 at 18–20. Since that is the case, judgment is proper on these claims.

### II. The Motion to Certify

HT moves for an order certifying to the Supreme Court of Colorado the question whether Western owed HT a duty to defend under the Policies "in light of the public policy and guidelines for interpretation of insurance policies issued" in Section 13-20-808. Doc. 34 at 4. HT argues this is a question of first impression in Colorado and thus should be certified to the Supreme Court of Colorado. Doc. 40 at 2. But as explained, Section 13-20-808 doesn't apply to the Policies because they weren't issued for "occurrences of damage or injury . . . arising from construction-related work." *Id.* §13-20-808(1)(d). Certification is unnecessary.

---

it would change the outcome. Section 13-20-808 says that, in Colorado, "insurance coverage" issued to construction professionals should be construed "broadly for the insured." Colo. Rev. Stat. § 13-20-808(1)(a)(III). But even under a "broad" construction of the Policies, the retaining wall was connected with the construction of a residential structure.

## CONCLUSION

For the foregoing reasons, HT's motion for summary judgment, Doc. 26, and motion for an order certifying a question to the Supreme Court of Colorado, Doc. 34) are **DENIED**, and Western's motion for summary judgment, Doc. 27, is **GRANTED**. The Clerk shall enter judgment for Western and close the case.

DATED: July 10, 2020.     BY THE COURT:

_____
Daniel D. Domenico
United States District Judge